IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LOCAL 88502 OF THE INTERNATIONAL UNION OF ELECTRONIC, ELECTRICAL, SALARIED, MACHINE AND FURNITURE WORKERS AFL-CIO-CWA,<br>　　　　Plaintiff,<br><br>　　　v.<br><br>MORGAN ADVANCED MATERIALS AND TECHNOLOGY, INC.,<br>　　　　Defendant. | C.A. No. 19-215 Erie<br><br>District Judge Susan Paradise Baxter |

## MEMORANDUM ORDER

**I.　INTRODUCTION**

**　　A.　Relevant Procedural History**

On July 26, 2019, Plaintiff Local 88502 of the International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers AFL-CIO-CWA ("the Union"), commenced this action by filing a complaint against Defendant Morgan Advanced Materials and Technology, Inc. ("the Company"), claiming that the Company is undermining the grievance, arbitration and "No Strike No Lockout" provisions of the current collective bargaining agreement ("CBA") between the parties.

Presently before the Court is Plaintiff's motion for preliminary injunction [ECF No. 3], by which Plaintiff seeks an Order "restraining [the Company] from eliminating part of the certified bargaining unit and replacing it with non-union employees, pending arbitration on the Union's grievance challenging [the Company's] plan as violative of the terms of the parties' [CBA]. (ECF No. 3, at p. 1). In other words, Plaintiff "seeks to preserve a meaningful

1

opportunity to arbitrate its dispute with the Defendant" under the CBA. (ECF No. 4, Plaintiff's Brief, at p. 1). The Company has since filed a memorandum in opposition to the Union's motion [ECF No. 11],[1] and this Court held a hearing on August 5, 2019, at which counsel for both parties appeared and presented oral arguments. This matter is now ripe for disposition.

### B. Relevant Factual History

On or about March 20, 2019, the Company informed the Union that it was contemplating a decision to dissolve its Maintenance Department and to subcontract its maintenance operations to an outside company called Advanced Technology Services ("ATS") (hereinafter referred to as the "Outsourcing Proposal"). The Union rejected the Outsourcing Proposal; however, after a period of decisional bargaining that failed to produce an agreeable alternative, the Company informed the Union on May 30, 2019, that it had decided to proceed with subcontracting its maintenance operations to ATS, and subsequently executed a contract with ATS on June 3, 2019. On the same date, the Union filed a grievance challenging the Company's decision as a violation of the CBA.

At the time of the Outsourcing Proposal, the Company's Maintenance Department consisted of nine bargaining unit employees. Sometime during the bargaining process, four of the nine maintenance employees decided to retire, three of whom received severance pay.[2] Three other maintenance employees accepted jobs with ATS, at higher wage rates, and agreed to receive severance pay from the Company. Another maintenance employee declined a job with ATS and, instead, accepted a severance payment from the Company. The remaining maintenance employee elected to exercise his right under the CBA to accept a voluntary layoff.

---

[1] The opposition was also a memorandum in support of a motion for summary judgment, which is not yet joined.

2 According to the Company, the fourth employee accepted retirement before becoming eligible for a "substantial severance payment." (ECF No. 11).

On July 8, 2019, after the parties were unable to resolve the Union's grievance, the Union submitted the grievance to arbitration, and an arbitrator was subsequently chosen by the parties; however, the arbitration is not scheduled to occur until after the Company's full implementation of its Outsourcing Proposal. The instant motion for injunctive relief ensued.

## II.     DISCUSSION

The Norris-LaGuardia Act, 29 U.S.C. § 101, *et seq.,* generally prohibits federal courts from issuing injunctions in labor disputes, providing, in pertinent part, that:

> No court of the United States, … shall have jurisdiction to issue any restraining order or temporary or permanent injunction in a case involving or growing out of a labor dispute, except in strict conformity with the provisions of this chapter; nor shall any restraining order or … injunction be issued contrary to the public policy declared in this chapter.

29 U.S.C. § 101.

Nonetheless, the Supreme Court has recognized a narrow exception to this general prohibition when the involvement of the federal courts is necessary to encourage and promote the voluntary resolution of labor disputes through arbitration. Boys Markets, Inc. v. Retail Clerks Union, Local 770, 398 U.S. 235 (1970) (upholding an order enjoining a strike pending resolution of an arbitrable dispute through the contractual grievance process). The Court emphasized the narrow application of this exception in Buffalo Forge Co. v. United Steelworkers of America, 428 U.S. 397 (1976), where it stated that the justification for a *Boys Markets* injunction is not to remedy a breach of the collective bargaining agreement, but instead solely to enforce the promise to arbitrate. "Thus, a *Boys Markets* injunction is appropriate only where necessary to prevent conduct that threatens or frustrates the arbitral process agreed to by the parties." Nursing Home & Hosp. Union No. 434 AFL-CIO-LDIU by Mackson v. Sky Vue Terrace, Inc., 759 F.2d 1094,

3

1098 (3d Cir. 1985), citing United Steelworkers of America v. Fort Pitt Steel Casting, 598 F.2d 1273, 1282 (3d Cir.1979).

"In order to determine whether the exception delineated by the Supreme Court in *Boys Markets* is applicable to the facts relevant to the case at bar we must consider: '1) whether the underlying dispute is subject to mandatory arbitration, 2) whether the [movant], rather than seeking arbitration of his grievance, is interfering with and frustrating the arbitral processes ... which the parties ha[ve] chosen, and 3) whether an injunction would be appropriate under ordinary principles of equity.'" IUE-CWA v. Flowserve Corp. of Pennsylvania, 239 F.Supp.2d 527, 530-31 (M.D.Pa. 2003), quoting United Steelworkers of America, AFL–CIO, v. Fort Pitt Steel Casting, 598 F.2d 1273, 1278–79 (3d Cir.1979).

Here, the parties have agreed, by their words and conduct, that the underlying contractual dispute is subject to mandatory arbitration. Thus, the first prong of the above analysis is beyond dispute. As to the second prong, the Union must prove that an arbitration would be rendered meaningless in the absence of an injunction. As more succinctly stated by the Fourth Circuit in Lever Brothers Co. v. International Chemical Workers, Local 217, 554 F.2d 115 (4th Cir. 1976),

> An injunction to preserve the Status quo pending arbitration may be issued either against a company or against a union in an appropriate *Boys Markets* case where it is necessary to prevent conduct by the party enjoined from rendering the arbitral process a hollow formality in those instances where, as here, the arbitral award when rendered could not return the parties substantially to the Status quo ante.

Lever Brothers, 554 F.2d at 123; see also Texaco Independent Union of Coraopolis Terminal v Texaco, Inc., 452 F.Supp. 1097, 1105-06 (W.D.Pa. 1978).

Thus, an injunction is appropriate only if an arbitrator's award cannot restore the union members to the "status quo ante," thus rendering the arbitration process a "hollow formality."

See Lever Brothers, 554 F.2d at 123; Lodge 802, Broth. Of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers AFL-CIO v. Sun Ship, Inc., 511 F.Supp. 347, 350 (E.D.Pa. 1981). "The arbitration process is rendered meaningless only if any arbitral award in favor of the union would substantially fail to undo the harm occasioned by the lack of a status quo injunction. Niagara Hooker Employees Union v. Occidental Chemical Corp., 935 F.2d 1370, 1378 (2d Cir. 1991), citing Local Union No. 733 v. Ingalls Shipbuilding, 906 F.2d 149, 152 (5th Cir. 1990).

Here, the Union has failed to persuade the Court that any arbitrator's award would substantially fail to restore the status quo ante. At the time the Union filed its preliminary injunction motion, four union employees had already retired (three of whom received severance payments), three others obtained higher paying jobs and will also receive severance pay, and one remains on voluntary layoff. At oral argument, the Union's counsel stated, "we're not sure that an arbitrator could order the Company to reinstate any of the employees who have signed severance agreements." (ECF No. 17, at p. 10). The Company counters that this argument is based on an improper view of what it means to restore the status quo ante. While the Union argues that the status quo "does not include unilateral changes or unilateral actions taken by the Company" before the injunction request, the Company maintains that the status quo to be restored is that which existed at the time of the injunction request. (Id. at p. 17). In support of this contention, the Company cites the case of Bakery Drivers and Salesmen Local 194, IBT v. Harrison Baking Group, Inc., 869 F.Supp. 1168 (D.N.J. 1994). (Id.).

In Harrison Baking, the company, over the union's protests, implemented efforts to sell off all of its delivery routes that were being serviced by union drivers. The union filed a motion for preliminary injunction seeking to restore the status quo pending arbitration of its dispute with the company. At the time of the filing for injunctive relief, all of the company's delivery routes

5

were either already independently owned by third parties or had been sold, or committed to be sold, to the union drivers to be run independently from the company. Thus, the district court noted that "It appears, therefore, that the alleged harm, if any, caused by the sales or transfers of delivery routes has already occurred. It cannot be said, therefore, that absent status quo injunctive relief, an arbitrator's award would be rendered meaningless because it appears the remedies available to an arbitrator are unlikely to change in the instant case prior to arbitration." Harrison Baking, 869 F.Supp. at 1177. Notably, in making this determination, the court went on to observe the following:

> … it appears the injunctive relief sought in the instant case will not merely maintain the status quo…. Instead, **the requested relief in the instant case seeks to change the status quo by rescinding previous sales and transfers of routes prior to arbitration. Such preliminary relief is not appropriate, nor is it necessary to preserve the arbitral process.** The Union can have its dispute with Harrison arbitrated, as provided in the Agreement, and it appears the available remedies will not change in the absence of injunctive relief.

869 F.Supp. at 1179. As in Harrison Baking, the Union here is not merely seeking to maintain the status quo, but is seeking to restore the conditions that existed prior to the company's implementation of its Outsourcing Proposal. In other words, the Union similarly seeks to change the status quo by rescinding the subcontracting agreement with ATS, the severance agreements with the former Union employees, and the severance payments that have already been made. As quoted above, "Such preliminary relief is not appropriate, nor is it necessary to preserve the arbitral process." Harrison Baking, 869 F.Supp. at 1179.

The Company notes that an arbitrator could still "restore the lost wages for the one employee who elected a layoff, and could even issue a restoration order" that "would restore the same unacceptable condition that existed at the plant before the subcontracting – an inadequate

maintenance staff." (ECF No. 11, at p. 16). The Company adds that "The possibility that the arbitrator would not be able to compel the Company to re-establish a maintenance department exactly as it was prior to the engagement of ATS does not suggest that arbitration would become a hollow formality." (Id.). The Court agrees. Indeed, the Second Circuit has noted that

> … the arbitral process is not rendered "meaningless" … by the inability of an arbitrator to completely restore the status quo ante or by the existence of some interim damage that is irremediable.

Niagara Hooker, 935 F.2d at 1378. See also Local Union No. 884, United Rubber Workers v. Bridgestone/Firestone, Inc., 61 F.3d 1347, 1354 (8th Cir. 1995) ("The fact that the arbitration decision will not be able to restore perfectly the status quo ante is not enough; the injury must be irreparable and must threaten the integrity of the arbitration process itself.").

Based on the foregoing, the Court finds that the Union has failed to meet its burden of showing that the arbitral process would be rendered "meaningless" in the absence of an injunction. See Sky Vue, 759 F.2d at 1098 (finding that the union's failure to establish frustration of the arbitral process makes injunctive relief inappropriate); Fort Pitt Steel Casting, 598 F.2d at 1282 (same).[3]

AND NOW, this 9th day of August, 2019,

IT IS HEREBY ORDERED that the Union's motion for preliminary injunction [ECF No. 3] is DENIED.

*Susan Paradise Baxter*
_____
SUSAN PARADISE BAXTER
United States District Judge

---

[3] Having so found, the Court has no reason to consider the traditional equitable factors for injunctive relief.